# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN



GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-1742
Re: Advancement to counties for
school transportation aid
under the provisions of House
Bill No. 933, Acts, 46th Legis-
lature, Regular Session

We are in receipt of your letter of November 27, 1939, which reads as follows:

"I am attaching hereto a complete file covering partial payments of grants for the years 1939-1940 as provided in Section 10 of House Bill No. 933 passed at the Regular Session of the Forty-sixth Legislature.

"Is this department authorized to issue warrant in payment of this claim in its present status?

"I shall thank you to return this file with your opinion."

In order to clearly present the facts and questions submitted to this department, we consider it necessary to outline the material contained in the file accompanying your letter of request. The warrants which are proposed to be issued to approximately one hundred ninety counties in the state of Texas are in amounts ranging from a few dollars per warrant to in excess of $25,000.00 per warrant, totaling $1,067,915.00. The claims presented to your department are listed in the following manner:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"Transportation Report

"District                                    Amount of Warrant

Anderson County
County Board                    $17,749.00 Transportation

Angelina County

County Board                    11,784.00 Transportation"

Attached to this list, which was apparently submitted to the State Auditor, is the following certificate which has not been signed or executed.

"I, Tom King, State Auditor, certify that the herein order passed by the Joint Legislative Advisory Committee directing the payment of $1,067,915.00 is a procedure which will not prevent a complete audit of the transportation accounts as provided in House Bill No. 933 before final payments are made.


State Auditor and Efficiency Expert"

There is also attached to said list of proposed warrants the following resolution:

"RESOLVED, that the Joint Legislative Advisory Committee, under authority vested in it by House Bill No. 933, Acts of the Forty-sixth Legislature, Regular Session, hereby approves for payment the sum of $1,067,915.00 for transportation.

"The Joint Legislative Advisory Committee hereby authorizes and directs the Comptroller of Public Accounts of the State of Texas to issue his warrants against the State Treasury made to the respective county boards of education listed herein against appropriation A 786 and deliver same to the Director of Equalization for transmittal to the various county depositories."

This resolution is signed by Olan R. Van Zandt, Chairman, Joint Legislative Advisory Committee.

The correspondence in the file submitted discloses that on November 7, 1939, State Superintendent L. A. Woods transmitted the foregoing list of warrants to Honorable George H. Sheppard, State Comptroller, stating that on October 10, 1939, "transportation aid was granted to the county boards of education whose names appear on the attached list in amounts set opposite the names," by the Joint Legislative Advisory Committee. The following resolution passed by the Joint Legislative Advisory Committee on said date is set out in the letter:

"Mr. Smith moved that the Committee authorize the Department of Education to make remittances to the several school transportation systems of Texas, as authorized in Section 10 of House Bill #933, in an amount of fifty per cent of the actual grants approved for payment for 1938-1939 and all future payments of such transportation grants shall be audited and adjusted for payment by the Auditor in charge of rural aid before any such payments are made. Motion unanimously carried."

There is also attached to said letter the following sworn statement by State Superintendent L. A. Woods:

"This is to certify that the several grants herein stated, aggregating $1,067,915.00 are correct and are unpaid and are due and payable as shown in the resolution of the Joint Legislative Advisory Committee."

Under date of November 21, 1939, State Superintendent L. A. Woods transmitted the above mentioned list of warrants to Honorable Tom King, State Auditor and Efficiency Expert, requesting that he audit the data therewith presented and give his approval or disapproval. The Honorable Tom C. King, State Auditor, answered this request on November 22, 1939, as follows:

"Your letter requests that I audit the data and file presented and approve or disapprove same for payment.

"I regret the necessity of returning to you your request for a partial advance disbursement

of transportation aid funds in the amount of
$1,067,915.00, appropriated under H. B. 933
passed by the 46th Regular Session of the Texas
Legislature, for compliance with the following
sections or parts of the following sections of
the act:  Sections 1, 2, 3, 4, 6, 8, 10, 12, 13,
14, 15, 16, 17, and 24.

"The file submitted by you with your letter
of November 21, 1939, is being returned to you
herewith without action by this department due
to inadequate information in the application, nor
has such information been submitted to this df-
fice in proper form for auditing."

On November 23, 1939, the State Superintendent noti-
fied the Chairman of the Joint Legislative Advisory Committee
that the State Auditor had declined to give his approval to
the payment of said claims and therefore the State Superin-
tendent was appealing this case to the Joint Legislative Ad-
visory Committee for a decision on the matter.

The Chairman of the Joint Legislative Advisory Com-
mittee replied to this letter on November 24, 1939.  We quote
in part from his letter since it suggests the theory upon
which the Joint Legislative Advisory Committee and the State
Department of Education directed the Comptroller to issue the
warrants in question:

". . . I also note that you have asked the
Joint Legislative Advisory Committee, whose powers
are particularly set out in Section 1 of said Bill
and in Section 17 thereof, also, to take this
matter into consideration.

"In view of the joint authority of said Com-
mittee and yourself to allocate and expend monies
appropriated in said Bill for the purpose of more
equalizing education opportunities in Texas, I
as Chairman of said Committee, consider that the
authority granted in Section 1 is of superior au-
thority to that granted the State Auditor's De-
partment in Section 17 thereof.  However, in view
of the controversy which has arisen, and in re-
cognition of the appeal taken to said Committee,
I am directed by said Committee as Chairman thereof
to pass to you the following information:

"The Committee has taken up and considered
the appeal in question as shown by the letter
attached and after full deliberation and consider-
ation thereof again orders the payment of $1,067,915,
as shown by the attached order passed by the Com-
mittee on October 10 and shown in your letter to
the Comptroller under date of November 7, and you
are further advised that said Joint Legislative Ad-
visory Committee in all things approves your ask-
ing the Comptroller to issue warrants as hereto-
fore outlined."

We shall not attempt to review all of House Bill
No. 933, however, it will be necessary to discuss in general
the provisions of the Act.

House Bill No. 933, Acts of the Forty-sixth Legis-
lature, commonly known as the Rural Aid Equalization Law,
appropriates $6,825,827,00 for the aid of public schools
meeting the requirements of the Act for the school year end-
ing August 31, 1940, and allocates $2,160,373.00 for trans-
portation aid. (Sections 1 and 11). Allocations are also
made for salary aid and high school tuition aid. All school
districts in the State of Texas are not entitled to partici-
pate in the distribution of the money thus appropriated but
the Act contains detailed qualifications, requirements, pro-
visions and procedure to be followed before the money therein
appropriated shall be paid to the various districts. Some
of the elements to be taken into consideration in determin-
ing the eligibility of a school district to receive aid under
this Act are that it shall come within certain minimum and
maximum scholastic population brackets (Section 2); the
school shall not be located within two and one-half miles of
another school of the same race (Section 3); the district
must be voting, levying and collecting for the current year
a local maintenance school tax of not less than fifty cents
on the one hundred dollars valuation (Section 6); proper
applications must be filed before October 1, 1939, and ap-
proved and audited and allotments made based upon such ap-
plications (Sections 13, 16, 17, 23); districts must show
a budgetary need for aid (Sections 10, 12 and 13) and other
provisions not necessary to mention here.

Section 10, which specifically refers to transporta-
tion aid, reads in part as follows:

"The expense of such transportation shall
be paid on the basis of budgetary need as indicated
by approved State Aid application, out of the
funds herein allocated for transportation aid,
. . ."

Section 13 provides that "no application for aid
shall be approved until all applications filed on or before
October 1 of the current year have been considered" and also
reads in part:

". . . Provided, also, that all aid granted
out of the funds herein provided shall be alloted
only on the basis of need, based upon a proper
budgeting of each district asking for any type of
aid. The application shall be sworn to by the
County Superintendent, president and secretary of
the board of trustees of each of the schools ap-
plying for aid. All aid granted out of the funds
provided shall be allotted only on the basis of
need based upon an approved budget of each dis-
trict asking for any form of aid, except as other-
wise provided in this Act. All applications for
aid authorized herein shall be on file with the
State Department of Education not later than Octo-
ber 1 of each year of the biennium, and any school
not filing such application before such date of
each year shall not be eligible for aid for the
current year and shall not be considered or approv-
ed for the type of aid applied for."

It is provided in Section 12 that:

". . . It shall be the duty of the State
Superintendent of Public Instruction to appoint
the number of Deputy State Superintendents here-
inafter authorized to make a thorough investiga-
tion, in person, of the grounds, building equip-
ment, teaching staff, and financial condition of
each school applying for aid; and no aid shall
be given unless it can be shown that all provi-
sions of this Act have been complied with, and
that such amount of aid is actually needed. . ."

The Legislature foresaw the desirability of making
payment to the various school districts without extended de-
lay and provided the method for so doing in Section 16 which

reads in part:

"Not later than January 15 of each year, the
state inspection of all Rural Aid Schools shall be
completed. Initial payment by warrant of not more
than fifty per cent (50%) of the total amount al-
lotted to any one school shall then be made, and
the final payments shall be made on a percentage
basis to such schools in such manner that all
schools whose applications for aid have been approv-
ed, so that each school will receive the same pro-
portion of aid."

Section 22 contains the following provisions:

"All applications . . . for transportation aid
coming within the general provisions of Section 10
of this Act shall first be considered, and if approv-
ed in the manner authorized and directed herein,
shall first be paid out of the appropriation made
for each of the years of the current biennium in
the manner and method herein directed, and said aid,
if so granted, shall be first paid out of the ap-
propriations, and allocations herein made to an amount
not exceeding one hundred per cent (100%) of the
approved grant therefor, and all exceptions to the
general law permitting and granting aid to the sev-
eral school districts of this State shall be paid
only if and when those approved applications coming
within the general provisions of this Act have first
been paid, and such exceptions shall then be allowed
and admitted as approved, and upon approval they
shall be paid out of such allocations remaining un-
expended and then upon a pro rata per capita basis
out of the funds remaining unexpended in each of the
allocations herein made and not otherwise. . . ."

No citation of authority is necessary to support
the proposition that the appropriations made in the above
bill are to be controlled and expended under the provisions
thereof and not under the terms of the Act of the Forty-
fifth Legislature or the applications filed and approved for
the year 1938-1939. The Act is clear that a school, to re-
ceive any aid for 1939-1940, must properly file its applica-
tion not later than October 1, 1939, show a budgetary need
for the current year and meet the other requirements based
upon the current school year. When the applications are re-

ceived in the State Department of Education they are then
investigated (Section 12) and none can be approved until
they have all been considered (Section 13). The purpose
of this investigation is not to determine whether the money
has already been properly spent but to serve as a basis for
approval or rejection of filed applications, "and no aid
shall be given unless it can be shown that all provisions of
this Act have been complied with, and that such amount of
aid is actually needed." (Section 12). The investigation
must be completed by January 15th of each year. Then the
initial payment not exceeding fifty per cent (50%) shall be
made, i.e., after the investigation is completed. When the
investigation is completed the Department is prepared to ap-
prove or reject applications. The Legislature having pro-
vided that transportation aid shall be paid on the basis of
budgetary need "as indicated by approved State Aid Applica-
tion," and that after the investigation of applications has
been completed partial payments may then be made, we think
the legislative intent is clear that partial payments are
not authorized before the investigations are completed and
applications are approved.

The record presented to us does not show that any
applications for 1939-1940 have ever been approved and e are
informed that the Deputy State Superintendents are now en-
gaged in their investigations.

It has been suggested that Sections 1 and 17, to-
gether with the action taken by the Joint Legislative Advisory
Committee, may serve as a basis for the proposed action; how-
ever, we do not think they are controlling of the issues here
presented.

Section 1 makes the appropriation and provides that
the money is to:

". . . be allocated and expended by the
State Superintendent of Public Instruction through
the Director of Equalization in the State Depart-
ment of Education and under the supervision and ad-
vice of the special Joint Legislative Advisory Com-
mittee composed of following members: . . . . In
addition to other powers and duties they shall have
appellate and final jurisdiction on all matters of
dispute between said Department of Education and

any applicant for aid under the provisions and terms of this Act, and until otherwise changed and directed all rules and regulations of the State Board of Education shall govern the disposition of all applications for aid under the provisions of this Act; and said Committee shall have no authority to make any grant or aid except that authorized by this Act. . . ."

Section 17 provides:

"The State Auditor's office is hereby directed to audit all.applications for aid after same have been passed on by the Director of Equalization and when such application has been approved by said director, it shall then be the duty of the State Auditor to approve, or reject such application. Whenever there is a difference between the State Auditor and the Department of Education, the Joint Legislative Advisory Committee shall adjust same on the request of either department."

In this connection we also note that part of Section 12 which provides:

"It shall be the duty of the State Superintendent of Public Instruction, and he is hereby authorized, to take such action and to make such rules and regulations not inconsistent with the terms of this Act as may be necessary to carry out the provisions and intentions of this Act subject to the approval of the Joint Legislative Advisory Committee created in this Act, and for the best interest of the schools for whose benefit the funds are appropriated. . . . Provided, however, that no regulation of the State Superintendent, State Board of Education or Joint Legislative Advisory Committee shall conflict with any provisions of this Act or any present statute. . . ."

As indicated by the sections of the Act hereinabove discussed it is our opinion that the payment of money out of this appropriation other than upon approved applications would be contrary to and inconsistent with the express provisions of this Act, aside from any question of auditing.

Clearly the provision of Section 1 placing the spending of the money under the "supervision and advice" of the legislative committee does not empower the committee to suspend the provisions of the law and provide a different basis for payment. Likewise we do not think the arising of a "difference" between the State Auditor and Department of Education, assuming a difference as contemplated by Section 17 has arisen, was intended to have the effect of expanding the powers of the Committee to the extent that it might direct action contrary to the express provisions of the statute in adjusting such difference.

It is our opinion that the Comptroller of Public Accounts is not authorized to issue warrants in payment of the claims referred to in your letter of request in their present status.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Cecil C. Cammack
Assistant

CCC:LM

APPROVED DEC 12, 1939

(s) Gerald C. Mann

ATTORNEY GENERAL OF TEXAS

APPROVED
opinion committee
By BWB
chairman